108 U.S. 243
 2 S.Ct. 543
 27 L.Ed. 714
 DISTRICT OF COLUMBIA
v.
WASHINGTON MARKET CO.
 April 9, 1883.
 
 The object of this action was to recover the sum of $53,847.23, with interest, alleged to be due from the Washington Market Company, by virtue of the terms of its charter, to the city of Washington, of which the plaintiff in error is the legal successor. The act of congress to incorporate the Washington Market Company (16 St. at Large, 124) took effect May 20, 1870. By the second section it was enacted that the company——
 'Is hereby authorized and empowered to locate and construct a suitable building or buildings upon the following-described grounds, namely, commencing at the intersection of the center line of B street north with the west line of Seventh street west; running thence north along the west side of Seventh street to the southerly side of Pennsylvania avenue; thence westerly along the southerly side of Pennsylvania avenue to the southerly side of Louisiana avenue; thence westerly along the southerly side of Louisiana avenue to the east side of Ninth street west; thence along the east line of Ninth street to the center line of B street; thence along the center line of B street to the place of beginning,—and to use and occupy the same by the erection of a suitable building or buildings for a public market-house, including the necessary stalls and sheds, and also for stores, public halls, and such other purposes as may be determined by said company, not inconsistent with its use as a public market. The buildings herein designated to be used for the purposes of a market shall be used for no other purpose inconsistent therewith, but the same shall remain a public market as hereinbefore described.'
 And provision was made, when the building was ready for occupancy, for letting out parts of the same as stalls and stands for market purposes, the rents for which were to belong to the market company. The buildings were to be constructed according to plans set forth in a schedule made part of the act. The company was required to purchase and pay for all buildings and fixtures then on the premises belonging to individuals, at prices to be fixed, if not agreed on, and to completely finish its structures and improvements within two years and sixty days after obtaining possession of the premises described. The twelfth, thirteenth, and fourteenth sections of the act are as follows:
 'Sec. 12. And be it further enacted, that the privileges conferred by this act shall be enjoyed by said company for the term of 99 years, unless sooner terminated for a non-compliance or abuse of the conditons herein imposed upon said company, which may be done by suit in the name of the United States, to recover possession of said property. At the end of said period of 99 years, the said lands, with all the erections and improvements thereon shall revert to the United States, unless congress shall by law extend the period of occupation thereof by said company: provided, that if the corporation of the city of Washington shall, after a period of 30 years from the approval of this act, by a vote of the councils thereof, express a desire to possess itself of the said market buildings and grounds, congress may authorize the corporate authorities to take possession of the same upon payment to the said market-house company of a sum of money equal to a fair and just valuation of the buildings and improvements then standing on said grounds, and the mode and manner of ascertaining such valuation shall be determined by congress.
 'Sec. 13. And be it further enacted, that the real estate herein described is hereby vested in the said corporation for and during the said term of 99 years, or until a forfeiture of its rights and privileges by a breach of the conditions herein imposed on said company, and said estate shall be taken and considered as a determinable fee. The real and personal property of said corporation shall be subject to assessment and taxation for all district and municipal purposes, in the same manner and to the same extent that like property in the city of Washington owned and possessed by individuals is liable to assessment and taxation.
 'Sec. 14. And be it further enacted, that in consideration of the privileges granted by this act to the Washington Market Company, the said company shall pay yearly, every year during the said term of 99 years, unto the city of Washington, the sum of $25,000; which sum shall be received by said city, and set apart and expended by and under the direction of the city government of said city, for the support and relief of the poor of said city and of the District of Columbia; and said city may enforce the payment of said sum from time to time as the same shall become due, either by an action at law or by the same proceedings now authorized by law for the collection of taxes by said city.'
 The real estate granted by this act was public property of the United States. It had been, and at the time of the passage of the act was, used as a market, and the buildings thereon, erected by individuals for such use, and which the market company were required to purchase, were subsequently destroyed by fire. Thereupon congress passed the following joint resolution, which took effect December 20, 1870, (16 St. at Large, 589:)
 'Be it resolved by the senate and house of representatives of the United States of America in congress assembled, that the chairman of the committees on public buildings and grounds of the senate and house of representatives, with the mayor of Washington, be and hereby are constituted commissioners to require the Washington Market Company, organized under the fifteenth section of the act of May 20, 1870, promptly to furnish temporary market accommodations for the marketmen who were driven out by the late fire; and also to erect, at the earliest possible day, the first stories or market portions of the permanent market buildings provided for in said act; and that said commissioners be authorized to make such alterations in the buildings and such arrangements with said company as shall be best calculated to secure the speedy erection of buildings creditable to the city, and sufficiently commodious for all the wants of the public: provided, however, that the passage of this resolution shall not be construed to supersede, delay, or in any way affect the pending investigations into the affairs of said company, nor to relieve the company or any person from consequences of any acts under investigation.'
 On February 21, 1871, the municipal government of the city of Washington was superseded by the act of congress of that date, providing a government for the District of Columbia as its successor, and the legislative assembly of the District of Columbia, on August 23, 1871, passed the following resolution:
 'Be it resolved by the legislative assembly of the District of Columbia, that the governor be authorized and required to act as one of the commissioners of the Washington Market Company, under the resolution of congress approved December 20, 1870; and that he be requested to procure such alterations in the plan of the buildings to be erected by said company as shall transfer the proposed hall from the Ninth-street wing to the main building on Pennsylvania avenue, and also to secure a reduction from $25,000 to $20,000 of the annual rental required to be paid by said company, and which is now assessed by the company upon the stall-holders.'
 The act of congress making appropriations to supply deficiencies, etc., approved March 3, 1873, (17 St. at Large, 540,) contains the following paragraph:
 'For the purchase by the United States of the interest of the District of Columbia in the present city-hall building in Washington, now used solely for government purposes, such sum as may be determined by three impartial appraisers, to be selected by the secretary of the interior, not exceeding $75,000, the same to be applied by said district only for the erection of a suitable building for the district offices; and the governor and board of public works are authorized, if they deem it advisable for that purpose, to make arrangements to secure sufficient land fronting on Pennsylvania and Louisiana avenues, between Seventh and Ninth streets: provided, that the government of the United States shall not be liable for any expenditures for said land, or for the purchase money therefor, or for the buildings to be erected thereon; and no land, or the use thereof, is hereby granted for the purpose of erecting any building thereon for such building.'
 On June 26, 1873, the legislative assembly of the District of Columbia passed an act appropriating the sum of $90,000 for the erection of a suitable building for the district offices, under the direction of the governor and board of public works, which included the sum of $75,000, receivable for its interest in the city-hall building, under the provisions of the above paragraph from the deficiency appropriation act.
 In view of that expenditure the governor and board of public works had made an arrangement for a site for the intended structure with the Washington Market Company, which is contained in the following memorandum of agreement between them:
 'In pursuance of the act of congress of March 3, 1873, authorizing the governor and board of public works, if they deem it advisable, for the purpose of erecting thereon a suitable building for district offices, to make arrangements to secure sufficient land fronting on Pennsylvania and Louisiana avenues, between Seventh and Ninth streets, it is hereby agreed that——
 '(1) The Washington Market Company shall, by good and sufficient quitclaim deed, release and convey to the District of Columbia all the title and interest of said company acquired under act of congress of May 20, 1870, incorporating said company, in and to so much of the land within said district, described in section 2 of said act, and fronting Pennsylvania and Louisiana avenues, as is contained within the following limits: Beginning at the southwest corner of Seventh street and Pennsylvania avenue; thence westerly along the southerly side of Pennsylvania avenue to its intersection with the southerly side of Louisiana avenue; thence westerly along the southerly side of Louisiana avenue to the east side of Ninth street; thence along the east line of Ninth street 86 feet; thence easterly on a line parallel with the aforesaid southerly line of Louisiana avenue to a point 86 feet south of said intersection of the southerly line of Pennsylvania and Louisiana avenues; and thence on a line parallel with the aforesaid southerly side of Pennsylvania avenue to the westerly line of Seventh street, at a point 86 feet from the corner began at; thence northerly along the west line of Seventh street 86 feet to the corner began at.
 'The Washington Market Company shall also, in said deed, convey to said district the right to use in common with said market company, as a passageway and court-yard, all the land between the lot conveyed in said deed and a line drawn westerly from Seventh to Ninth street, 10 feet north of the north walls of the present Seventh and Ninth street buildings of said market company.
 '(2) In consideration of the aforesaid release and conveyance by the Washington Market Company to the District of Columbia, the district will assume and fulfill all obligation imposed upon the company by section 14 of said act of May 20, 1870, (as modified by act of the legislative assembly of the district of August 23, 1871,) except as follows:
 'The Market Company shall pay annually to the District of Columbia, during the term, and for the purpose mentioned in said section 14, the sum of seven thousand five hundred dollars, payable quarterly, which sum shall during said term be in the place of all rental for the ground occupied by the market buildings of said company; and in case in any year the general district taxes upon said ground and market buildings shall exceed $5,500, the excess above that amount shall be deducted from said rental of $7,500, so that the total annual payments for rental and taxes shall not exceed $13,000; the district, however, not hereby releasing, but expressly reserving, and the market company hereby confirming, the right of the district, given by section 2 of the act of May 20, 1870, of fixing and controlling, for the protection of the market dealers and of the public, the amount of rentals of the stalls and stands in said market buildings; and it is also hereby agreed that the annual rental of stalls and stands in the other markets in the city of Washington shall not be fixed by the district authorities at a lower rate per square foot of area than 70 per cent. of the rate fixed under said section for stalls and stands in the market buildings of said company; and the district shall not use the land released and conveyed as aforesaid for the purpose of a market.
 'This agreement shall take effect April 1, 1873, and the market company shall at once settle its past rental account to that time at the rate, since August 23, 1871, fixed by the resolution of the legislative assembly of that date, and shall immediately pay the balance due the treasurer of the district.
 'Possession of the land conveyed shall be given the district upon the day of executing this agreement.
 'Dated at Washington, March 18, 1873.
 'WASHINGTON MARKET COMPANY,
 By M. G. EMERY, President.
 'H. D. COOKE, Governor,
 'ALEX. R. SHEPHERD,
 'JAMES A. MAGRUDER,
 'S. P. BROWN,
 'ADOLF CLUSS,
 'Board of Public Works.'
 By a deed of the same date the Washington Market Company conveyed and released to the District of Columbia the real estate described in the agreement, which deed was delivered and recorded.
 From the bill of exceptions, taken upon the trial of the action in the supreme court of the District of Columbia, it appears that——
 'To further maintain the issues upon its part joined, the defendant offered and gave evidence to the jury tending to prove that immediately upon the execution of said agreement of March 18, 1873, said defendant settled with the proper officers of said District of Columbia its past rental account on the terms and in the manner fixed in said agreement, and paid to the treasurer of said district the balance agreed in said settlement to be due from the defendant to said district; that defendant had paid its said rental account from and including March 18, 1873, to April 1, 1873, at the rate of $20,000 per annum. Defendant further gave in evidence a letter dated April 1, 1873, signed officially by the comptroller at that date of said district, and addressed to said defendant, acknowledging that defendant had settled and paid to said district all amounts due from defendant on rental account up to said April 1, 1873. Defendant further proved that from said last date to the date of this suit it has paid to the plaintiff, on account of said rent, at the rate of $7,500 annually; that immediately subsequent to the date of said agreement and execution and delivery of said indenture, conveying to the plaintiff the property fronting on Pennsylvania avenue between Seventh and Ninth streets north-west, in the city of Washington, District of Columbia, the plaintiff took possession of the ground between said limits, and made excavations for a foundation for a building for offices for the District of Columbia, but had not proceeded more than a few days in excavating before the work was stopped; that the defendant has not, from the date of said indenture, been in possession of or exercised any power or authority over the ground so conveyed, or any part thereof.'
 And there was no evidence inconsistent with this. The amount sought to be recovered by the plaintiff is the annual rental of $25,000, accrued during the period specified in the declaration, giving credit for payments actually made, but without regard to the reduction and settlement claimed by the defendant under the agreement of March 18, 1873. This agreement the plaintiff in error claims to be void. The court below, being of a different opinion, directed a verdict for the defendant, the judgment on which is brought into review by this writ of error.
 A. G. Riddell and H. E. Davis, for plaintiff in error.
 [Argument of Counsel from pages 251-254 intentionally omitted]
 Wm. Birney and B. F. Butler, for defendant in error.
 MATTHEWS, J.
 
 
 1
 We see no ground of support for the suggestion of counsel that congress, by the act incorporating the Washington Market Company and fixing the terms for their use of the public property granted to them, established an irrevocable charitable trust for the poor of Washington City, and thereby disabled itself from authorizing any subsequent changes in the mode and conditions of that grant; nor are we willing to accept the debates that are reported as occurring in congress at the time of the passage of the deficiency appropriation act of March 3, 1873, as evidence of the meaning of the clause on which the controversy in this case depends. The question is whether, according to its correct construction, that clause authorized the parties to execute the agreement into which they entered.
 
 
 2
 Upon a consideration of the language of the provision, it becomes apparent that the sum of money appropriated by it as compensation to the District of Columbia, for its interest in the city-hall building, was to be applied only for the erection of a suitable building for the district offices. No part of it could lawfully be expended in the purchase of land for a site. It is equally plain that no public lands belonging to the United States were granted to be used for that purpose. Express authority is given to the governor and board of public works to make arrangements to secure land fronting on Pennsylvania and Louisiana avenues, between Seventh and Ninth streets, if they deem it advisable, for that purpose. It is not denied that, in connection with the express declaration that no right to use any public ground was thereby granted, this description necessarily covered a portion of the real estate granted to the market company by their act of incorporation. Any arrangement to secure it as a site for the district buildings must necessarily be made with them. And power granted to the authorities of the District of Columbia to make such an arrangement also carried with it power on the part of the market company to become parties to it. The fact that the latter are not expressly named is without legal significance. The designation of the property was also the designation of its owner.
 
 
 3
 It is evident, also, that the arrangement authorized to be made was described as intended to have the effect of securing the land for the purpose. This necessarily implied that the arrangement, when made as authorized, should be final. The suggestion that it was intended to be preparatory and preliminary only, as the basis of a report to be made afterwards to congress for its approval and ratification, finds no warrant in the context, and is quite clearly negatived by the terms in which the act repels the idea that the arrangement to be made should in any way commit the United States to any liability to pay for any expenditures, either for the land itself or the improvements to be made upon it. It is, therefore, clearly to be inferred that the arrangement intended was to be made with the market company for a designated portion of their land, and that it must be effected without the outlay of any money.
 
 
 4
 This could be accomplished in but one way. It was to induce the market company to relinquish their right to the exclusive use of the specified portion of their land, upon the basis of some modificacation of the terms upon which it was held. As these embraced payments of money, which the market company were under obligation to pay to the District of Columbia, and which the government of the district had exclusive power to administer for the purposes described in the act, it follows that it must have been intended to authorize such an arrangement in respect to these obligations of the market company as would furnish to the latter a consideration and inducement for a release of a part of their property. And no consideration for the release of a part of demised property is more suitable to the nature of the relation between the parties than an equitable or agreed apportionment of the rent. Such was the form and substance of the arrangement in question. The adjustment of the arrearages of rent was a legitimate incident, whether the prior agreement for a reduction of the amount from $25,000 to $20,000 was lawful, at the time it was first made, or not. It became so by becoming part of the arrangement finally entered into. Whether other provisions of the arrangement, not brought into this controversy, such as the provision relating to the maximum of taxes thereafter to be assessed, and in respect to the rental of stalls to be charged to occupants in the market-house building, are lawful and binding, it is not necessary to decide, as they are not proper matters of consideration in the present action.
 
 
 5
 We are of opinion that there is no error in the record of this judgment, and it is accordingly affirmed.